UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 09-38 (MJD/FLN)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | GOVERNMENT'S RESPONSE TO |
| v. ) | DEFENDANT'S POSITION WITH |
| ) | RESPECT TO SENTENCING |
| KAMAL SAID HASSAN, ) | |
| ) | |
| Defendant. ) | |

The United States of America, by and through its attorneys B. Todd Jones, United States Attorney for the District of Minnesota, Assistant United States Attorneys Charles J. Kovats, Jr., John Docherty, LeeAnn K. Bell, and Department of Justice Trial Attorney William M. Narus hereby submits its Response to Defendant's Position with Respect to Sentencing Factors (the "Defendant's Position").

In the Defendant's Position, the defendant makes several objections to the Presentence Report ("PSR") and seeks several adjustments and departures. The government responds to each below.

    **A.    The Terrorism Enhancement Found in U.S.S.G. § 3A1.4 Applies**

In objecting to the application of the § 3A1.4 adjustment, the defendant questions which "government" could trigger the application of the enhancement and who properly constitutes the victim. (*See* Defendant's Position at 15). The defendant also argues that he had no intent to influence the power structure in his native country. The United States respectfully disagrees with both points.

With respect to his conviction for providing material support to a conspiracy to kill abroad, the defendant has testified that he traveled to Somali to fight against the Ethiopians. He did so out of a belief that the Ethiopian military should not be in Somalia, and he understood that he would be fighting aginst the Ethiopians with guns and that it would include trying to kill them. (*See* Appendix 1 to Sentencing Position of the United States at 11 ("Hassan's Testimony")). In response to questions from the Court, Hassan explained that he knew that the Transitional Federal Government of Somalia was the legitimate government of Somalia and that it had invited the Ethoipian troops into Somalia. (*Id*. at 60). Both his intent and the effect of his offense were calculated to influence the conduct of a government through violence.

The defendant's conviction for providing material support to the foreign terrorist organization al Shabaab also meets the criteria for application of the terrorism enhancement. In addition to knowing that al Shabaab intended to fight against the Ethiopians, Hassan learned through "Amo" that the goal of al Shabaab was to take over Somalia (and neighboring countries). (*Id.* at 92). Hassan testified on cross examination that he learned that he would be fighting against the TFG and soldiers sent by the African Union. (*Id.* at 232). Even assuming he was not personally motivated by overthrowing the TFG, he understood that his offense, that is, providing himself to al Shabaab, was calculated to influence the conduct of the TFG and the government of Ethiopia.

Finally, the defendant's offense of making false statements to the FBI supports the terrorism enhancement for the reasons stated previously.

### B. The Defendant's Role in the Offense Was Not Minor

The defendant seeks a downward role adjustment in the PSR because he was recruited by others to travel to Somalia, he was under the authority of others while in Somalia, and he acted at the direction of others in Somalia when receiving training, building the camp and participating in the ambush. (*See* Defendant's Position at 18). The United States disagrees.

The defendant's offenses included receiving military training from a foreign terrorist organization, graduating from an al Shabaab training camp, reciting the ideology of al Shabaab on a propaganda video, and participating in an ambush of the Ethiopian military with other members of al Shabaab. His offense conduct lasted almost a year. The United States has not sought an upward adjustment for his role nor has there been a suggestion that Hassan planned the travel to Somalia or led men into combat in Somalia, but his conduct as a foot-soldier for al Shabaab as it waged war against the Ethiopian military and TFG is consistent with the conduct of an average participant.

### C. The Defendant's Criminal History Category is Not Overstated

The defendant argues that Hassan's Criminal History Category is overstated by placement in Category VI because he is not a danger and has assisted the United States. (*See* Defendant's Position at 21).[1]

---

[1] The defendant argues that he has not committed any crimes since January 2009 and has not violated any rules while incarcerated. (*See* Defendant's Position at 21). The United States agrees that the defendant has not violated the rules at the detention facilities in which he has been housed, but notes that he has pleaded guilty in August 2009 to

3

The United States, in its initial Sentencing Pleading, gave a full description of the Terrorism Adjustment found at U.S.S.G. § 3A1.4.  That will not be repeated here.  One does not calculate criminal history in a guidelines analysis merely to perform a mathematical exercise; courts calculate criminal history because it is one factor that helps them assess the risk of recidivism, and accurately predicting recidivism risk is an important part of sentencing.  18 U.S.C. § 3553(a)(2)(C) (one of the objectives of sentencing is to craft a sanction that will "protect the public from further crimes of the defendant"); *United States v. Foote,* 705 F.3d 305, 308 (8th Cir. 2013) ("a primary goal of the guidelines is to reduce recidivism" *quoting United States v. Hines,* 628 F.3d 101, 113 (3rd Cir. 2010)).  Some crimes are weighted more heavily than others for guidelines criminal history purposes because some crimes predict recidivism more strongly than others.  *Foote,* 705 F.3d at 308 ("convictions for crimes involving illegal narcotics correlate strongly to recidivism.").

Congress engaged in precisely this analysis when it directed the Sentencing Commission to place certain terrorism defendants in Criminal History Category VI.  As the Second Circuit observed in *United States v. Stewart,* 590 F.3d 93, 143 (2d Cir. 2009) "we have recognized that 'the Sentencing Commission had a rational basis for creating a uniform criminal history category for all terrorists under [U.S.S.G.] § 3A1.4(b), because even terrorists with no prior criminal behavior are unique among criminals in *the*

---

making false statements to the FBI in February 2009 about aspects of what had occurred in Somalia and withheld the identities of some who had participated.

*likelihood of recidivism,* the difficulty of rehabilitation, and the need for incapacitation.'" (*quoting United States v. Meskini,* 319 F.3d 88, 92, *cert. denied sub nom. Haouari v. United States,* 538 U.S. 1068 (2003) (emphasis supplied)).

    **D.**    **The Defendant's Cooperation**

The United States has submitted a letter under seal to the Court with its evaluation of the defendant's cooperation. (In what appears to be a typographical error, the United States notes that Hassan was taken into custody in August 2009 rather than August 2008. (*See* Defendant's Position at 22).)

    **E.**    **Duress and Coercion**

The defendant requests that the Court consider forms of duress and coercion when determining a variance because of early attempts at recruitment that centered on telling the defendant about the Ethiopian invasion and its negative impact on Somali civilians. (*See* Defendant's Position at 24). He argues that the invasion of Somalia by the Ethiopian military stirred his sense of national identity. (*Id.* at 25).

To his credit, the defendant testified before this Court and accepted responsibility for his offenses. He explained his motivation for traveling to Somalia with other young men he met at the mosque, which included a desire to make contact with his fiancé (Hassan Testimony at 31), a sense of duty to come to the aid of people in Somalia (*id.* at 29), a sense of adventure (*id.* at 32, 33), and connection with the other men who were part of the plan (*id.* at 56). The defendant also explained that there was a religious component to the trip that justified the action of the group. (*Id.* at 35). He thought that he was being

5

a good Muslim and Somalian by joining the men and going over. (*Id.* at 17). He did not testify to being targeted for recruitment or persuaded to go; he was informed of the trip and agreed to join these men. (*Id.* at 34-35).

### F. Sentencing in Other Terrorism Cases

The defendant refers the Court to the sentence imposed on Daniel Maldonado, among others, in which he received a sentence of 120 months for receiving military-style training from al Qaeda for the time he spent in Somalia between November 2006 and January 2007 during which he attended training camps. He testified at the trial of Tarek Mehanna in Boston in 2011. His sentence of 120 months in 2007 accounts for his cooperation and his plea agreement requires his continued cooperation. Maldonado's case differs significantly from the defendant's in that Maldonado spent approximately two months in Somalia and did not provide support to al Shabaab after it was designated as a foreign terrorist organization by the United States. Even so, he received ten years of imprisonment during which he has cooperated to include testifying in a terrorism trial.

### G. Sentencing Factors

The United States respectfully disagrees that there has been no indication of dishonesty since February 9, 2009. (*See* Defendant's Position at 28). The defendant entered his guilty plea to the terrorism offenses on February 18, 2009, and maintained his false statements about his activities in Somali and what had occurred in the United States during his colloquy. (Hassan Testimony at 173). In early April 2009, the defendant revealed the truth about his activities in Somalia and those who were involved in the

conduct.  (*Id.* at 176).  Since April 2009, there has been no indication that Hassan has been dishonest.

### H.     CONCLUSION

The Guideline sentencing range for the offense to which the defendant pleaded guilty would be 360 months' to life imprisonment but for the limitation provided by the 456-month statutory maximum.  Because the PSR correctly calculated the defendant's guideline range, the defendant's objections and requests for adjustments or departures should be denied.

Dated: May 10, 2013                                  Respectfully Submitted,

                                                                  B. TODD JONES
                                                                   United States Attorney

                                                                   *s/ Charles J. Kovats, Jr.*

                                                                  CHARLES J. KOVATS, JR.
                                                                 JOHN DOCHERTY
                                                                 LEEANN K. BELL
                                                                Assistant United States Attorneys

                                                                 *s/ Charles J. Kovats, Jr.*

                                                     for   WILLIAM M. NARUS
                                                                  Trial Attorney
                                                                  U.S. Department of Justice